THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: August 5, 2016

G. Michael Halfenger
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In Re:

    Shawn W. Sternat,                              Case No. 15-21681-GMH

            Debtor.                                      Chapter 13

**DECISION**

The debtor, Shawn Sternat, moves under 11 U.S.C. §522(f)(1)(A) to avoid a judicial lien on his residence held by his ex-wife, Rebecca Sarazin. Section 522(f)(1)(A) allows debtors to avoid judicial liens securing most debts to the extent those liens impair exemptions to which debtors would be entitled in the liens' absence. Sarazin contends that the Supreme Court's decision in *Farrey v. Sanderfoot* forecloses avoidance of her lien. 500 U.S. 291 (1991). For the reasons that follow, I grant the debtor's motion.

I

While the debtor and Sarazin were married, Sarazin failed to pay payroll taxes owed by her health-care staffing agency. This left the couple with substantial tax debt. By 2014, they owed nearly $172,000 in taxes and penalties and $30,000 to Sarazin's business mentor who had loaned her money to keep the agency afloat. See *Sternat v. Sternat*, 2014AP2844, ¶2, 2015 WL 6509082 (Wis. Ct. App. 2015).

In June 2012, the debtor and Sarazin filed for divorce in the Circuit Court for Fond du Lac County, Wisconsin. For ease of reference this decision will refer to the circuit court as the "divorce court."

On October 2, 2012, for reasons the parties do not explain, Sarazin and the debtor executed a quitclaim deed in which they together, as grantors, conveyed their interests in the couple's marital residence to the debtor, individually, as grantee. CM-ECF Doc. No. 110-2. The debtor (or his agent) recorded the deed with the Fond du Lac County Register of Deeds on October 11, 2012. *Id*.

On September 14, 2014, almost two years after the debtor recorded the quitclaim deed, the divorce court issued findings of fact, conclusions of law, and judgment of divorce, which this decision will call "the divorce judgment." See CM-ECF Doc. No. 109-1, at 1-14. The divorce court expressly found that the spouses could support themselves and that neither was entitled to maintenance. *Id.* at 14.

The divorce court ruled that the tax debts were marital debts subject to equal division. The divorce judgment charged those debts to Sarazin. *Id.* at 13. It awarded her assets that included real property in Lake Linden, Michigan; a 2008 BMW; a 1969 Camaro; and financial accounts. *Id*.

The divorce judgment awarded the residence to the debtor, along with other assets, and "obligated [him] to pay the entirety of the mortgage thereon". *Id*. at 12. Based on the division of assets and charge of debt responsibility, the divorce court required the debtor to make "an equalization payment [to Sarazin] of $178,923.00". *Id*. at 13. The divorce judgment required the debtor to sell the residence quickly, stating, "[b]ecause the marital residence is the only remaining asset of value, it is hereby ordered to be sold to pay these debts as an equalizing payment from husband to wife, as soon as reasonably practical." *Id*. The divorce judgment did not impose (or even mention) a lien or other charge on the residence to secure the debtor's obligations. Sarazin entered the divorce judgment in the judgment and lien docket on October 20, 2014. *In re Marriage of Sternat*, 2012FA000249 (Fond du Lac Cir. Ct. 2014), available at https://wcca.wicourts.gov. The debtor does not dispute that once entered in the judgment and lien docket, the divorce judgment gave rise to a lien on the residence under Wis. Stat. §806.15 to secure his obligation to make the equalization payment.

The debtor failed to sell the residence or make the equalization payment. After Sarazin commenced efforts to collect, including garnishing his wages (see CM-ECF Doc. No. 1, at 26), the debtor filed this chapter 13 case. The debtor exempts his interest in the residence as his homestead, as authorized by 11 U.S.C. §522(b)(3) and Wis. Stat. §815.20 (allowing exemption of up to $75,000 in homestead property). CM-ECF Doc. No. 1, at 11. He asserts that the residence is worth $300,000 and secures mortgage and real-estate-tax debts totaling about $258,000. CM-ECF Doc. No. 1, at 7 and 12; and Doc. No. 27, at 4. His

amended schedules acknowledge Sarazin's lien securing the equalization award of approximately $179,000. CM-ECF Doc. No. 27, at 4.

The debtor's unconfirmed debt-adjustment plan treats Sarazin as an unsecured creditor, stating, "Debtor has a property settlement with ex-wife Rebecca Sarazin, per divorce decree. Rebecca Sarazin's debt shall be treated as a general unsecured debt through the plan." CM-ECF Doc. No. 3, at 5. In order to render Sarazin's claim unsecured, the debtor moved to avoid her lien under 11 U.S.C. §522(f)(1)(A). CM-ECF Doc. No. 28.

II

Section 522(f)(1)(A) provides that a debtor may avoid a judicial lien on the debtor's property to the extent that the lien impairs an exemption to which the debtor would have been entitled in the lien's absence:

> (f)(1) . . . the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is –
>
> (A) a judicial lien . . .

11 U.S.C. §522(f)(1)(A). In order to avoid a lien under §522(f)(1)(A), therefore, the lien the debtor seeks to avoid must (1) be a judicial lien; (2) impair an exemption that the debtor could claim under 11 U.S.C. §522(b) in the absence of the lien; and (3) have "fixed" to the debtor's pre-existing interest in the property. See *Farrey*, 500 U.S. at 295–96, 300–01; *In re Tolson*, 338 B.R 359, 365 (Bankr. C.D. Ill. 2005); *McCart v. Jordana (In re Jordana)*, 232 B.R. 469, 473 (B.A.P. 10th Cir. 1999).[*]

A

Sarazin's lien is a judicial lien. Any "charge against or interest in property to secure payment of a debt or performance of an obligation" (11 U.S.C. §101(37)) "obtained by judgment . . . or other legal or equitable process or proceeding" (11 U.S.C. §101(36)) is a judicial lien for purposes of §522(f). Sarazin concedes this point. See CM-ECF Doc. No. 79, at 1.

B

Sarazin's lien impairs the debtor's homestead exemption. Section 522(f)(2)(A) directs that a lien impairs an exemption for purposes of avoiding a lien under §522(f) when the sum of all liens on the property plus the exemption amount exceeds the value of the debtor's interest in the property in the absence of all liens:

---

[*] Section 522(f)(1)(A) does not apply to liens securing domestic support obligations, but Sarazin does not contend that her lien is of this type.

> For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—
>
> (i)     the lien;
> (ii)    all other liens on the property; and
> (iii)   the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. §522(f)(2)(A). The sum of Sarazin's lien, mortgage liens, tax lien, and the exemption that the debtor could claim in the absence of any liens significantly exceeds the residence's alleged value. CM-ECF Doc. No. 27, at 4.

Sarazin does not contend that the property is worth more than the sum of the liens and the debtor's exemption. She instead objects to the debtor's homestead exemption. But she does not contest that the debtor's residence meets the homestead-exemption requirements of Wis. Stat. §815.20(1):

> An exempt homestead [defined in Wis. Stat. §990.01(14) to include a dwelling and surrounding land reasonably necessary for use as a home] selected by a resident owner and occupied by him or her shall be exempt from execution, from the lien of every judgment, and from liability for the debts of the owner to the amount of $75,000, except mortgages, laborers', mechanics', and purchase money liens and taxes and except as otherwise provided.

Wis. Stat. §815.20(1). Specifically, Sarazin does not dispute that the debtor occupies the residence as his home.

She instead bases her objection on a contention that the debtor has no equity in the property to exempt because the total value of the debts secured by her "marital judgment lien" and other charges on the property exceed the residence's value. CM-ECF Doc. No. 18; see also CM-ECF Doc. No. 46, at 3. Sarazin's observation that her lien deprives the debtor of equity does not defeat the debtor's exemption. Section 815.20(1) expressly makes the homestead exemption applicable to judicial liens, as the quotation above demonstrates. Wisconsin's lien judgment statute also expressly makes judgment liens subject to the homestead exemption: "Every judgment properly entered in the judgment and lien docket . . . shall . . . be a lien on all real property of every person against whom the judgment is entered which is in the county where the judgment is rendered, *except homestead property that is exempt from execution under s. 815.20 . . .*". Wis. Stat. §806.15(1) (emphasis added). Sarazin's argument that her lien deprives the debtor of equity in the residence to exempt under §815.20's homestead exemption ignores that the judgment lien

statute expressly protects the debtor's equity from her lien up to the $75,000 homestead exemption amount. Sarazin does not otherwise dispute that her lien impairs the debtor's homestead exemption for purposes of 11 U.S.C. §522(f)(1).†

C

Sarazin's lien attached to the debtor's pre-existing interest in the residence. Sarazin's principal argument is that *Farrey v. Sanderfoot*, 500 U.S. at 301, requires a contrary conclusion.

1

*Farrey v. Sanderfoot* involved some similar circumstances. Sanderfoot, a Wisconsin debtor, sought to avoid Farrey's (his ex-wife's) lien on his property. A divorce judgment extinguished the parties' joint-tenancy interests, transferred the property in fee simple to Sanderfoot, and imposed a lien on the property to secure Sanderfoot's obligation to make an equalization payment to Farrey.

The Supreme Court held that Sanderfoot could not avoid Farrey's lien under §522(f)(1) because he did not own the entire property before Farrey's lien attached—critically, as a result of the parties' divorce decree, he acquired a new fee-simple interest in the property subject to the lien. "We hold", the Court wrote, "that § 522(f)(1) . . . requires a debtor to have possessed an interest to which a lien attached, **before** it attached, to avoid the fixing of the lien on that interest." *Id.* (emphasis added). Because the same order that created Farrey's lien also transferred the property in fee simple to Sanderfoot, her lien did not affix to his existing interest in the property. *Id.* at 299. For that reason, Sanderfoot could not avoid the lien under §522(f)(1): "Sanderfoot took the interest and the lien together, as if he had purchased an already encumbered estate from a third party. Since Sanderfoot never possessed his new fee simple interest before the lien 'fixed,' § 522(f)(1) is not available to void the lien." *Id.* at 300.

2

*Farrey* does not aid Sarazin. Sarazin transferred her interest in the residence to the debtor by quitclaim deed almost two years before the divorce judgment. The quitclaim deed made the debtor the sole owner of the residence long before any lien-creating act claimed by Sarazin—either issuance of the divorce judgment or the later entry of that judgment on the lien docket.

There is no doubt that the quitclaim deed made the debtor the sole owner of the

---

† Sarazin does not argue that her lien should be deemed not to impair the debtor's homestead exemption for purposes of 11 U.S.C. §522(f)(1) because, notwithstanding §522(f)(2)'s definition of impairment, Wisconsin law renders the lien inapplicable up to the value of the homestead exemption. As a result, this decision does not consider whether that argument has any merit.

residence. Wisconsin law generally allows spouses to reclassify marital property by joint conveyance, and marital property so conveyed becomes the individual property of the spouse who receives the transfer. See Wis. Stat. §766.31(10). Wisconsin's Marital Property Act makes clear that a "homestead may be reclassified under s. 766.31(10)." Wis. Stat. §766.605. And the parties' quitclaim deed satisfies §766.31(10)'s reclassification requirements. See Wis. Stat. §§766.31(10) ("Spouses may reclassify their property by . . . conveyance, as defined in s. 706.01(4), signed by both spouses . . ."); 706.01(4) ("'Conveyance' means a written instrument, evidencing a transaction governed by this chapter, that satisfies the requirements of s. 706.02, subject to s. 706.25."); 706.02 (requiring identification of the parties, land, and interests conveyed); 706.10(4) ("A quitclaim deed shall pass all of the interest in or appurtenant to the land described which the grantor could lawfully convey . . ."); and 706.25 (recording of deeds).

On October 2, 2012, the debtor and Sarazin, as husband and wife grantors, signed a quitclaim deed in favor of the debtor, Sternat, as grantee. CM-ECF Doc. No. 110-2. The debtor recorded the quitclaim deed nine days later. *Id*. Sarazin thus transferred her interest in the residence to the debtor before the occurrence of any act on which she relies to contend that she has a lien on the residence. Sarazin does not contest that the quitclaim deed had this effect or that it is inoperative under Wisconsin law.

3

Sarazin instead argues that the divorce court ruled that the residence was marital property at the time of the divorce judgment, thus *Farrey* should apply. CM-ECF Doc. No. 79, at 5-7. But the divorce court did not rule that the residence was marital property at the time of the divorce or that she then had an ownership interest in the residence.

The divorce judgment refers to the residence as the "marital residence". But neither that label nor the judgment's award of the residence to the debtor supports Sarazin's contention that she still had an ownership interest in the residence. "Marital property" subject to division upon divorce, as the Wisconsin Court of Appeals explained in *Kuhlman v. Kuhlman*, includes, with exceptions not applicable here, all property owned by the divorcing spouses, regardless of whether that property is marital property or individual property:

> [w]hile some confusion is inevitable when courts, as they often do, refer to a divorcing couple's assets as "marital property," the reference is not to "marital property" as that term is defined in the Marital Property Act, but simply to property of the marriage which is subject to division upon divorce within the meaning of sec. [767.61], Stats. The Marital Property Act, on the other hand, has nothing to do with division of property on dissolution of a marriage. [The Marital Property Act] is concerned only with the spouses' ownership of property during the marriage and at their death.

432 N.W.2d 295, 296 (Wis. Ct. App. 1988). See also Wis. Stat. §§767.61(1) ("Upon every judgment of . . . divorce . . . the court shall divide the property of the parties") & 767.61(2) (describing exceptions from property division for gifts and inheritances from persons other than one's spouse, as long as division of that property is not needed to avoid hardship).

The parties' transfer of the residence to the debtor through the quitclaim deed, which vested sole ownership in the debtor, did not remove the residence from the marital estate for purposes of property division by the divorce court. And the divorce judgment by its terms does not change the ownership of the residence or impose a lien on the residence. See CM-ECF Doc. No. 109-1; see also Wis. Stat. §767.61(5)(a) ("the court shall . . . Direct that title to the property of the parties be transferred *as necessary*") (emphasis added). It instead imposes a personal obligation on the debtor to sell the residence to make the equalization payment: "Because the marital residence is the only remaining asset of value, it is hereby ordered to be sold to pay these debts as an equalizing payment from husband to wife, as soon as reasonably practical." CM-ECF Doc. No. 109-1, at 13. Even if the divorce judgment's command that the residence "be sold to pay these debts as an equalizing payment . . . as soon as reasonably practical" could be considered to create a lien on the residence, that lien would have attached to the debtor's pre-existing fee-simple interest. It would thus be avoidable under 11 U.S.C. §522(f)(1)(A).

In contrast to *Farrey*, Sarazin had no interest in the residence when the circuit court issued the divorce judgment or when it entered the divorce judgment in the lien docket. Since October 2012, well before both the divorce judgment's issuance and entry of that judgment in the lien docket, the debtor could have alone conveyed the residence in fee simple without Sarazin acting as a co-grantor. Because the debtor owned the residence free of any interest of Sarazin before her lien attached, *Farrey* is inapposite, and the debtor may avoid Sarazin's judicial lien under §522(f)(1).

D

Sarazin alternatively contends that the divorce court's judgment gives rise to an equitable lien. Under Wisconsin law an equitable lien does not arise until there is a judgment recognizing it. See *Yorgan v. Durkin*, 715 N.W.2d 160, 169 (Wis. 2006) ("[w]here property of one person can by a proceeding in equity be reached by another as security for a claim on the ground that otherwise the former would be unjustly enriched, an equitable lien arises") (citation omitted); see also 51 AM. JUR. 2D LIENS §32 ("equitable lien is a mere floating equity *until a judgment or decree* subjecting the property to the payment of the debt or claim is rendered") (emphasis added). Put differently, an equitable lien is a form of remedy, rather than a property right. No property right exists before an order or judgment declares the lien's existence. 51 AM. JUR. 2D LIENS §31 (An equitable lien "is neither a debt nor a right of property, but merely a remedy for a debt."); RESTATEMENT

(THIRD) OF RESTITUTION AND UNJUST ENRICHMENT §56 (2011). No order or judgment declares that Sarazin has a lien, equitable or otherwise, on the debtor's residence.

Moreover, even if the divorce judgment could be interpreted to create an equitable lien on the residence, the debtor could avoid that lien. Equitable liens are judicial liens avoidable under §522(f). *Farrey v. Sanderfoot (In re Sanderfoot)*, 899 F.2d 598, 604–05 (7th Cir. 1990), rev'd on other grounds, *Farrey v. Sanderfoot*, 500 U.S. 291 (1991); *Kedzuf v. Turetsky (In re Turetsky)*, 402 B.R. 663, 666 (Bankr. W.D. Pa. 2009) ("any equitable lien . . . constitutes a judicial lien, within the meaning of 11 U.S.C. § 101(36)").

If an equitable lien in Sarazin's favor arose from the 2014 divorce judgment, as Sarazin contends, then that equitable lien would have attached to the debtor's pre-existing interest in the residence. Because, as discussed above, the debtor acquired sole ownership of the residence by the October 2012 quitclaim deed, §522(f)(1) authorizes him to avoid any equitable lien arising in 2014 that impairs his homestead exemption.

Sarazin remarks in passing that the "marital home was earmarked to pay the marital tax debts well before [the debtor] filed for bankruptcy protection." CM-ECF Doc. No. 79, at 9. But she does not contend that an equitable lien arose before or at the same time as the parties jointly transferred the residence to the debtor by the 2012 quitclaim deed. She also has not established that any of the necessary elements for an equitable lien under Wisconsin law existed before or at the time that the parties executed the 2012 quitclaim deed. She has thus forfeited such any argument.

III

For the reasons stated above, the court will enter a separate order providing that:

1. Sarazin's objection to the debtor's homestead exemption is overruled, and
2. Sarazin's judicial lien on the debtor's homestead at N3015 Hickory Road, Byron, Wisconsin (also referred to as N3015 Hickory Road, Brownsville, Wisconsin, and as N3105 Hickory Road, Brownsville, Wisconsin), is avoided under 11 U.S.C. §522(f).

The court will schedule further proceedings on (i) Sarazin's motion for relief from the 11 U.S.C. §362(a) stay, (ii) her objection to confirmation of the debtor's chapter 13 plan, and (iii) her adversary complaint alleging that the debtor's obligations to her are not dischargeable and that she is entitled to an order mandating sale of the residence.

#####